to the last case this morning, which is Bicha v. A Brighter Day. Counsel, are you ready to proceed? I think it's case number 20-1054. Yes. Thank you, Your Honor. Good morning. May it please the court? My name is Amy Colony. I am a Senior Assistant Attorney General of the Colorado Attorney General's Office. I am here today on behalf of Lori Birney, who is a Licensing and Monitoring Supervisor with Human Services, and Susie Tucker, who is a former 24-hour Monitoring Specialist, also with Human Services, who is supervised by Ms. Birney. Back in 2016, Ms. Tucker was assigned to monitor plaintiff's business, A Brighter Day, which is a child placement agency. Child placement agencies are non-profits that arrange for placement of children in foster care. They inspect foster care parent homes and make sure they're complying with Department of Human Guidelines. Among other tasks that a child placement agency has is to facilitate payment by the counties to qualified foster parents. This case is about whether adverse action by government actors, plus a difference in race with a lack of personal participation by these particular defendants, is enough to plausibly plead a claim of racial discrimination sufficient to overcome qualified immunity. There are three things that I want to address today. They are that the defendants did not waive qualified immunity in the court below. Number two, this court has jurisdiction over this interlocutory appeal. And number three, most importantly, I want to emphasize that the instances of how the department treated the two comparator white-owned businesses cannot be attributed to these two defendants, Ms. Birney and Ms. Tucker, because these two defendants are not alleged to have been involved in those particular licensing actions. So the plaintiffs have raised two issues in their answer brief that I want to get out of the way here first. One, they have asserted that the defendants have waived of the qualified immunity defense. We did not waive qualified immunity here. The defendants argue that if plaintiff has not met the Iqbal-Tuamli standard, then plaintiff has not satisfied the first prong of the qualified immunity standard. We argued below that the plaintiff failed to plausibly allege the elements of an equal protection claim. Therefore, the argument has been preserved. If plaintiff does not allege plausibility as to the first prong of the qualified immunity test, or the second prong to demonstrate clearly established law under white versus poly, then qualified immunity must lie. But regardless of plaintiff's opinion of the sufficiency of the brief- Counselor, if I may, I have a hard time understanding the qualified immunity argument. This case is, first of all, this case is on the pleadings, correct? It is, yes, your honor. It's still, so it's under 12B6, is that correct? 12B6 on the pleadings, yes, your honor. All right. So the case is not at the summary judgment stage yet. It's still at the pleading stage, and you're saying they're alleging racial discrimination, and you're saying we're qualifiably immune. And what I don't understand is the state of Colorado is not qualifiably immune to discriminate. They're not, your honor, they're not- Right, so basically what you're saying is we didn't discriminate, but that's a merits question. Whether you discriminate it or not is a merits question. And it gets really complicated when you try to assert qualified immunity in a discrimination case, because we don't even know what the facts are, and you're wanting us to dismiss because you're immune. Well, you're not immune to discriminate. That's correct, your honor. You may be immune from a lot of things, but you're not immune to violate people's rights. That is correct, your honor. And it is- What am I missing about this case? What we are- Where did that true go wrong? I don't understand. What we are arguing is that based on the pleadings, the allegations in the pleadings do not rise to the level of a racial discrimination claim. That's what we are arguing. The- Well, but that's not qualified immunity. That's 12B6. But the two standards tend to overlap with one another. And in this case, we have Judge Cruz specifically denying qualified immunity in footnote five of his order. And according to Montoya v. Vigil and Cox v. Glenn, that is all that is required to preserve the qualified immunity argument, is that the lower court expressly denies it, which he did expressly deny it. So regardless- But you're arguing that this court has jurisdiction on interlocutory appeal over a denial of qualified immunity that turns on factual sufficiency. And we have nothing before us with the complaint. So all we have to say is the complaint is sufficient on its face. End of case? Is that our duty? No, your honor. What we're arguing is that the pleadings themselves, the allegations are insufficient. What we have are allegations of- All right, but that's what you're saying. They're not sufficient. And we have to determine whether they are or are not sufficient. Right. But we can't as an appellate panel say, oh, the state of Colorado is qualifiedly immune because they have the right to discriminate. Duh, no, answer no. That is correct, your honor, that they don't have the right to discriminate. But the Well, what allegations would? I know that in your brief you concentrate on neither Tucker nor Bernie having made a statement that they were acting in this fashion toward the plaintiffs based on race. But that can't be the bar. You can't have to have that before you're allowed to be to 12b-6. What else is missing? What would work? I think what's missing can be found either in the two cases that plaintiffs have actually identified, Ramirez versus CDOC and the old standard case, Yick versus Woe, or Yick-Woe versus Hopkins, which is the famous Chinese laundry case from back from the 1800s. I think in Yick versus Woe, Yick-Woe versus Hopkins, we have a pattern of disparate impact. We have some 150 Chinese owned laundries owners being arrested for failing to get approval from a board of commissioners to operate. Meanwhile, there are 80 plus non-Chinese owned laundries that are allowed to operate free of these restrictions. So we don't have any allegations of disparate impact besides this particular business's experience with the department. I agree. It's not one of those cases. It's not talking about hundreds of affected people. We're talking about one. What would it take? What do you want in a complaint before you say it meets that a reasonable inference of racial animus has been? Either a pattern of disparate impact, and it doesn't have to be at those numbers. Obviously, Yick-Woe were huge numbers. But I would say looking at Ramirez versus CDOC, they had examples of the supervisor asking questions about national origin. So that adds something more, harassing questions about national origin. There's no harassing questions about race or national origin in this case. We think it takes something more because if all they need do is say adverse action was taken against us and we're of a different race, that puts a tremendous burden on regulators. Anytime they're dealing with a licensee that's a protected class. But counsel, aren't they saying more than that in the complaint? We have to accept the allegations as true for purposes of deciding. And they're alleging that these defendants fabricated allegations, fabricated violations against the plaintiffs. Why wouldn't false allegations against someone in a protected class permit an inference of discrimination? Because that is the common allegation. The reality is that anytime you have... I'm not sure I'm understanding what you mean by that, the common allegation. The allegation here is they made up violations against these plaintiffs. And that's what all licensees say. All licensees who are facing adverse action and they disagree with it say, this is false. This is being made up against us. We think it should require something more. Does that make it a legal conclusion? That's the question, right? Whether it's fact allegation or a legal conclusion. Why would that be a legal conclusion? I'm not sure I can answer that, your honor. Could you point to a case where a court has said in circumstances like this, where the plaintiffs, you have a minority business owners and the claim is that regulators have fabricated violations against them. Have you got a case that says that does not rise to the level of a discrimination claim? I do not have a case that says that, your honor. However, it is our contention that the second prong of the qualified immunity analysis lies strictly with the plaintiffs in this case. Before we leave that, let me just ask you a question about our process, which is we have a complaint and attached to the complaint is the ALJ decision, which I know the board has now taken a different view on, but are we allowed to look at the ALJ's findings on the points, such as whether or not there had been, there were made up regulatory violations that in fact are not violations and those sorts of items in determining whether or not the plaintiffs have risen to the 12B6 level? I would admit that it's incorporated because they've attached it and they've referred to it repeatedly in their complaint. I would admit, your honor, that the court is entitled to take that information into consideration. However, I don't believe that decision says anything about made up violation. It just found errors in how the violations were handed down. If it wasn't evident from my earlier questions, I have serious reservations about our jurisdiction in this case. I'd like to ask some jurisdictional questions before we get into all this merit stuff. Did you assert qualified immunity as a defense to the equal protection claim below? I did. You did? Yes, we did. Was that adequately developed? Was it found to be adequately developed? Well, I believe that Judge Cruz took issue with it and didn't believe it was adequately developed, but the key is... Does it matter that I also agree that I don't think it was adequately developed for purposes of jurisdiction, determining jurisdiction? Because I don't understand your qualified immunity defense. I asked you before, but you apparently were arguing that the right to receive the same treatment before a state agency was not clearly established. Did you argue that? No, I didn't argue that specifically, but despite the deficiencies and the way I may have argued it... Oh, you're satisfied that the law is clearly established? No, the clearly established prong is not my prong to prove. That is the plaintiff's prong to prove the clearly established prong of a qualified immunity test. Well, you're the state of Colorado, and you're arguing that it is not clearly established under Colorado law that a state agency may not discriminate on the basis of race. Are you seriously making that argument? No, I'm not making that argument. In this case, the two individual defendants, your honor, did not have any... It's not alleged that they had anything to do with the white-owned businesses, the comparators. And that's one of the key elements of an equal protection claim, is that the... But that goes to the merits. That's not qualified immunity. I'm talking about qualified immunity. You're saying the state of Colorado is immune from being sued in this case. And I understood you were saying because that law was not clearly established. And I said, what? Of course, it's clearly established. And now you're telling me that you are arguing that it is or it isn't. I don't know what you're arguing. It's clearly established on a general level that you can't discriminate in regulatory licensing. But we are... All right. Well, if that's clearly established, and that's the allegation, then why would you be immune? Because the allegations here do not rise to that level. There is something missing. Well, that sounds to me like a 12B6 argument, not a qualified immunity argument. That's why I'm asking about our jurisdiction. Thank you, counsel. Because I consumed two to three minutes of your time. If my colleagues have questions, I have no objection. All right. Okay. We're ready to hear from the appellee. Your honors, good morning. My name is Matthew Swindle. May it please the court, I represent the appellees of Brighter Day, Alonzo, and Kia Smith. And this is a denial of a 12B6 motion that's masquerading around as a qualified immunity appeal. And I recognize, as Ms. Colony pointed out, that sometimes those questions can overlap. Why isn't this one of those times? I'm sorry? Why isn't this one of those times, at least on the question of constitutional violation? I think because what they have pled is not that we didn't allege a violation of a constitutional right. What they've responded to in defense is that they just simply didn't discriminate. And that is a situation where, at the very least, as that Montoya v. Vigil case that both of us questions are inextricably intertwined and bundled up with the facts. And we're dealing with the question of factual sufficiency. And when the ultimate conclusion is a question of whether what this evidence can be used to show is sufficient, that's not an interlocutory appeal type of question. Counsel, we're only talking about the complaint here. The facts alleged in the complaint, correct? Correct, your honor. So we're not debating what the facts are. We have to accept what is alleged in the complaint, correct? Yes, your honor. I agree. Ultimately, this becomes a pure legal question as to whether the complaint adequately stated a claim, correct? I agree. But what else would we be doing? Well, the defense that is being stated here is not that we haven't failed. It's interesting. And I'm sorry, because it does jumble up. Their argument is that we have failed to state a claim. But the question on qualified immunity is whether we have alleged a constitutional violation. And that's the same question. Okay. And indulging that argument, if that's the same question, then if we look at the facts that are alleged in the complaint, we're not just making mere conclusory allegations. I know that defendants have said that a lot. But if you look at what we have actually alleged, we've alleged a clear violation of an equal protection right. Okay. Let's look at a couple of things in your complaint. You've alleged that these other agencies, Maple Star Colorado and Kids Crossing, were similarly situated to Brighter Day, correct? Yes, your honor. What facts have you alleged to show that they're similarly situated other than just to assert that they are? We have alleged that they have similarly substantial violations. No, no. Are they similarly situated? Not that they have violations. How are they similarly situated? Well, I believe it's not necessarily on us to plead the specifics of whether or not they're true comparators. That's a defense. Why not? Do you have a case that says that? I believe you come in and say, oh, these are similarly situated and we just have to accept that. Well, I don't think that's all. Doesn't Twombly and Iqbal require a little more than what you've done? Okay. I will agree with that. And here's what the extra is under Iqbal and Twombly. We've not just said we were treated differently because of race. We gave you the what, where, why, and how. No, no. Give us some specifics, counsel. You haven't said any, you haven't given me any specific facts from your complaint. Don't tell me what, why, or how. Let's hear some specifics. Okay. Specifically, when the, when the, when a brighter day got their license in 2012, they sailed through licensing for four solid years with no problem. Tucker and Bernie then get assigned to be their overseers. And we can start at the very moment they met because Ms. Tucker refused to shake the Smith's hand. Wait a second, counsel. What does that have to do with the other two agencies? You haven't even mentioned those. That's my question. How are they similarly situated? They are similarly situated because they are both child placement agencies. As far as we know, they are equal in size. They have similar violations, but the defendants did not equally enforce those violations or punish those violations as to Maple Star and Kids Crossing, the way that they did a brighter day. And as far to, I mean, I think to get to the nub of what you're, you're getting at here is what you're asking about is whether or not they're true comparators. Well, I believe that we have alleged because they are, they're owned by white owners. They have similar violations in some instances, more severe violations, yet they were treated differently. Okay. Okay. Ms. Connie, I think also made the point that Ms. Tucker and Ms. Bernie were not involved in regulating those other entities, or at least you haven't alleged that. Why isn't that fatal to your claim? Because we, we have no idea other than what Ms. Connie has said, whether or not they regulated them or not. Well, you know, whether you have an idea or not, you still need to state a claim. You haven't even alleged that upon information and belief that they were regulating these other entities. And again, I think that what you're getting at is a defense issue of whether or not they're truly similarly situated. And that is a miracle factual argument. Now, what I'm asking is how could they have discriminated against your client relative to these other clients if they didn't have anything to, other entities, if they didn't have anything to do with those other entities? And I understand the way that Ms. Connie has framed that issue. Well, now I framed it. And so what, what's the answer to that? We, the way that our particular defendants have violated our client's particular rights is, is very much wrapped up in the way that they enforced these neutral regulations against A Brighter Day, where it has at the same time, there were no adverse actions, no inspections, no harassment or targeted scrutiny of these other owners. But don't you have to show that the defendants you're suing, Ms. Bernie and Ms. Tucker were involved with those other agencies? I think that the personal participation involvement for these equal protection claims is you have to show that Tucker and Bernie were personally participating in the discrimination against our clients. And then it becomes their burden to show that they're not similarly situated. We have alleged that they are similarly situated. I don't want to belabor. I've already belabored the point, but if, if we disagree with your argument relative to a similarly situated, does that mean that you have failed to state a claim or do you have some other basis to have to, to state a claim for discrimination besides a differential treatment? We, I mean, we have a pattern and practice of adverse licensing actions taken against black owners that are not taken against other white owners. We have a... You do? You only have two other entities. Where's the pattern and practice? At this point, Your Honor, we only have two other entities. I mean, I don't think... You don't need to make the allegation. Have you said that in your complaint? Have we said what specifically? Pattern, if you allege the pattern and practice of discrimination in your complaint. I believe that we have based on how our clients were treated. What are you alleged? I mean, you keep talking in generalities. Point us to something in your complaint. Well, Your Honor, I mean, the, the specifics, I mean, what we've alleged is this targeted, lengthy, repetitive scrutiny. And if you'll indulge me... Of one client. Of one client, but of a multitude of violations that were not similarly alleged at other people or not similarly enforced against the Maple Star and the Kids Crossing, despite having either similar or more severe violations. They were not treated the same way. Let me just ask one other thing, and then I'm going to stop and let my other colleagues. Is there an independent basis for your discrimination claim to say that the fabricated violations alleged against your client, given its minority-owned business, that in itself is enough to state a claim in your complaint? Would you take that position or not? And if you do, have you got any case support for that? I mean, I think it's certainly standing on its own. I do think it is sufficient, given the complete context. When you've got a case that is built on circumstantial evidence, and especially at the pleading stage, we have alleged all of these fabricated violations. I could take you through a few of them if you would like, but in that Ramirez case that we have, it's very similar evidence. The rules are neutral, but they're being enforced against certain classes of people differently. Specifically, the supervisor was making up allegations against the plaintiff in Ramirez. They were being evaluated according to a more stringent standard versus the white inmates in Ramirez. And so it's the same. I mean, factually, it's the similar allegation that you're making up claims against me, you're taking these rules, and you're not applying them equally to others based... The only difference that we can see is based on race. And again, just to touch on your comparator argument, the comparator question... Counsel, I'm not making an argument. I'm just asking a question. I'm sorry. I don't mean to mischaracterize you. To kind of try to head on, advance your comparator question, I just don't think that the comparator issue is an issue that is dealt with on a motion to dismiss. It's not a fact bound about whether or not they're truly comparators. What we've alleged is that they are based on the fact that there were similar violations and more severe violations of a child placement agency, and they were not treated the same way. The difference between the two agencies, one was white, one was black. Now, that may not be the case once discovery opens. They may be able to make out their defense that they're not truly comparators, but that's not where we're at. We're on a 12B6 motion where the allegation is that they are comparators. Here are the allegations where they had violations that were not treated the same. And so at this point, I think to increase the standard, especially on a 12B6, where it's not the same as a summary judgment standard, even with the qualified immunity question, to increase the standard and ask for us to come up with proof in the pleading of how situated they are, I don't think that's what's required under 12B6 in this particular situation. Now, I would, if the court will indulge me, just to get specific about what this targeted harassment actually looks like, because we were rather general about the way that the rules were enforced against the Smiths. I'd like- Counsel, if I may, if Judge Matheson is finished. I'm going to cite here to Wise v. Casper, a 10th Circuit case, in which we held that pretrial determination of evidentiary sufficiency in qualified immunity cases is not immediately appealable. So as I understand, what the state did here is they, under the guise of bringing a qualified immunity appeal, they start to argue all of their 12B6 matters, which would, standing alone, because of all this factual dispute and the status of the record, would not be appealable at this point. So we got to find out, is the qualified immunity appeal legitimately taken? And as I understand it, the district court did nothing more than in a footnote, said that any matter of qualified immunity was denied. But the qualified immunity case had never been argued. It had never been developed below. So are we now supposed to be developing it? That is the question I ask. Or does Wise kick in? I think that you're right on top of that. And this is just like, in my opinion, this is just like the Said v. Virginia case. What the defendants did below was gave us a smattering of the qualified immunity standard and then announced we're entitled to qualified immunity. And the reason we're entitled to qualified immunity is, guess what, we didn't discriminate. So they used a factual answer to answer the legal question of whether or not we pled a constitutional right. They conflated these two standards. We did not have a well-developed qualified immunity argument. What we had was a, like you said, Judge Cruz took it up in a footnote and noted that it was woefully underdeveloped because there was no question, there was no discussion, there was no citations as to whether or not the right to be free from equal or from discriminatory enforcement and neutral regulations was established because it clearly is. I mean, that's a question that's not even really in dispute, whether or not you have that right. The question was vis-a-vis or not vis-a-vis, sorry. The question was, did we discriminate? And that is an inherently factual question. We have alleged the instances in which we were treated differently. And the question is a factual one. Was this discrimination or not? And that's a question for a fact. Does the notice of appeal in this case actually take a 12B6 appeal? And if so, do we have jurisdiction at this point to consider it other than the qualified immunity shoelace? Your Honor, I do not know. I did not look at the notice of appeal except at the very beginning just to see if the rules were complied with. So I don't recall that specifically. But I think that you are going down the right road there. As we pointed out in our brief, this did not really raise a legal question. This is not the classic qualified immunity question of, did this violate a right? So we cited Leatherwood v. Welker. And Judge Matheson, you were on that panel. The question there was, can you get a warrantless search of a probationer's home based on an informant's tip? That was a legal question. That's perfectly teed up for qualified immunity. That's appealable. Whether or not what we've alleged in the way that the rules were enforced against the Smiths and how they were treated differently from other rule violators like Maple Star and Kids Crossing, whether or not that's discrimination is really the third prong of the McDonnell-Douglas test. They have brought forth a neutral reason and said we didn't discriminate. And the question then is, is this pretext? But at this point, we're not there yet. We've jumped the gun by several steps, moving from a 12B6 to really what's a summary judgment argument. And that is my time. And so I will continue to answer questions or otherwise I will let it rest, Your Honor. I think the state had some time remaining, however. Judges, they're actually, both sides are out of time. We'll grant the state with the panel's permission a minute to define any answer that they have. Thank you, Your Honor. I think that Montoya v. Vigil makes it clear that the lower court doesn't have to say much in order to preserve the qualified immunity issue for interlocutory appeal. And here, while it was just a statement in a footnote, that... But counsel, it's okay to appeal, I guess, if you have a basis of appeal on qualified immunity alone. Now forget the 12B6 issues. What is the basis of your qualified immunity appeal? That the plaintiffs have not met the first prong to demonstrate, to advance enough allegations to demonstrate a violation of the Equal Protection Clause. All they have is adverse action. That sounds like 12B6 to me, but I'm sure the court will sort it out in our panel discussions. Thank you. Counselor excused. Case is submitted.